**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave, Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMANDA PERKINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIGHTBUZZ E-COMMERCE LLC d/b/a HEYSHAPE<br><br>Defendant. | Case No. 2:25-cv-11398<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Amanda Perkins brings this action on behalf of herself, and all others similarly situated (the "Class Members") against Defendant Lightbuzz E-Commerce LLC, d/b/a HeyShape ("Defendant" or "HeyShape"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. The market for shapewear, which encompasses Defendant's products, is one of the fastest growing apparel markets in the world. The global shapewear market was valued at $2.73 billion in 2024 and is expected to reach $4.32 billion by 2030.[1]

2. Defendant seeks to carve out its own share of this hypercompetitive market by offering perpetual "sales" and discounted products through its website at www.getheyshape.com (the "Website").

3. It is no secret that consumers actively seek out bargains and discounted items when making purchasing decisions. Retailers, including Defendant, are well aware of consumers' susceptibility to such perceived bargains. Products perceived by consumers to be discounted, however, are not always actual bargains. In an effort to give off the appearance of a bargain, Defendant intentionally misleads consumers as to the quality and value of the merchandise available on its Website (the "Products") through its deceptive sales tactics.

4. When consumers visit Defendant's online store, they are shown purported "sale" prices on Defendant's Products with strike-through pricing. *See e.g.,* Fig. 1.

---

[1] GRAND VIEW RESEARCH, *Shapewear Market (2025 - 2030)*, https://www.grandviewresearch.com/industry-analysis/shapewear-market.




**Figure 1**

5. But Defendant's purported sales are in reality anything but. Defendant never actually sells its Products at the advertised strike-through price.

6. It is well established that false "reference" pricing violates state and federal law. Nonetheless, Defendant employs inflated, fictitious reference prices for the sole purpose of increasing its sales. Defendant engages in this deceptive practice to deceive and mislead consumers, including Plaintiff, into believing they are receiving a bargain on their online purchases to induce them into making a purchase they otherwise would not have made.

7. As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiff and Class Members, as defined herein, were induced into purchasing the Products under the false premise that they were of a higher grade, quality, or value than they actually were.

8. Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of the California Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, et seq., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq*., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., fraud, and unjust enrichment. Through this action, Plaintiff seeks to enjoin Defendant from its false and deceptive sales practices, and Plaintiff seeks to obtain actual and statutory damages, restitution, injunctive relief, and reasonable attorneys' costs and fees.

## PARTIES

9. Plaintiff Amanda Perkins is a citizen of California and resident of Los Angeles, California.

10. On or around February 2024, Plaintiff made a purchase from Defendant's e-commerce Website, including a Snatched Shapewear Bodysuit,[2] a Snatched Thong Bodysuit (the "Bodysuit"), and a Shapewear Slip Maxi Dress (the "Dress"). The Bodysuit Plaintiff purchased displayed a purportedly sale price of $45.00, and the Dress displayed a purportedly sale price of $64.00. At the time of her purchase, the Products also contained purportedly original strike-through prices of $65.00 for the Bodysuit and $89.00 for the Dress. Before purchasing the Products, Plaintiff reviewed information about the Products, including Defendant's representations that the Products were being offered at a discounted sale price, including but not limited to that the Products have a "new lower price," representing that consumers "save $X," and displaying a strike-through reference price. When purchasing the Products, Plaintiff also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendant that the Products were ordinarily offered at a higher price.

11. Plaintiff relied on Defendant's false and misleading representations and warranties about the Products in making her decision to purchase the Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products, or would not have paid as much for the Products, had she known Defendant's representations were not true. Defendant's representations about its HeyShape Products are false and misleading because they induce consumers into believing that they are purchasing a Product of a higher value and quality than they actually are. Defendant's Products are never offered at the higher, strike-through reference price.

[2] Plaintiff received her Snatched Shapewear Bodysuit (i.e., one of her three product purchases) for $0.00 pursuant to a promotion Defendant was running. Even so, this product was represented as being on sale for $41.00 (compared to the strike-through price of $59.00).

12. Had Plaintiff known the truth—that the representations she relied upon in making her purchase were false and misleading—she would not have purchased the Products or would have paid less for them. Plaintiff did not receive the benefit of her bargain, because Defendant's Products were not of the represented quality and value. Plaintiff understood that her purchase involved a direct transaction between herself and Defendant, because the Products she purchased came with packaging, labeling, and other materials prepared by Defendant.

13. Defendant Lightbuzz E-Commerce LLC, d/b/a HeyShape, is a Delaware corporation with its principal place of business in Beaverton, Oregon. Defendant manufactures, markets, and advertises and distributes its HeyShape Products throughout the United States, including California. Defendant manufactures, markets, and advertises and distributes its Products throughout the United States, including California. Defendant manufactured, marketed, and sold the Products during the relevant Class Period. The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Products were primarily or exclusively carried out by Defendant.

## **JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

15. This Court has personal jurisdiction over the Defendant because Defendant purposefully directs its business activities in this District by offering its products to residents of this District and performing services in this District. Further, Plaintiff was residing in this District when she accessed the Website and placed her order, which Defendant knew would cause harm within California.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, a substantial part of the events

giving rise to the claims occurred in this District, and because Plaintiff accessed the Website and received the Products in this District because she resides in this District.

## FACTUAL ALLEGATIONS

### A. Federal and State Law Prohibits Defendant's "Sales" Practices

17. California law provides clear guidelines as to permissible and unlawful sales tactics:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

18. Additionally, California law expressly prohibits making false or misleading statements of fact "concerning reasons for, existence of, or amounts of price reductions." See Cal. Civ. Code § 1770(a)(13).

19. The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics. See 16 C.F.R. § 233.

20. The FTC provides the following guidance on former price comparisons:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is

> not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a) (emphasis added).

21. The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.**" 16 CFR § 233.1(b) (emphasis added).

22. The FTC provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

23. Essentially, federal and state law provide that sales practices should be offered in good faith and accurately reflect the price at which (1) either the products were formerly sold, or (2) comparable products are sold in the market. Defendant's sales practices do neither.

**B. Defendant's Deceptive "Sales" Practices**

24. Defendant manufactures, markets, sells, and distributes its Products throughout the United States, including California, through its online e-commerce store.

25. In an effort to increase sales, Defendant engages in a pervasive online marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted sale price. Defendant is aware that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a product's quality or value is difficult to discern.[3]

26. Defendant has multiple methods of deceiving consumers into believing that they are receiving a bargain on the Products they purchase through Defendant's online e-commerce store.

27. One way Defendant misleads consumers is by utilizing a fictitious strike-through reference price accompanied by a purported discount amount. Next to the fictitious reference price is a lower purported "sale" price. Defendant does this to mislead its customers into believing they are saving money by purchasing products that are on sale.

28. For example, Figure 2 is a screenshot of Defendant's Website and Products taken on November 20, 2025. Each Product is advertised at a discounted price, next to a deceptive strike-through price.

[3] *Information and Consumer Behavior*, Phillip Nelson, J. OF POL. ECON. 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").




**Figure 2**

29. Defendant consistently uses strike-through prices to mislead consumers, including Plaintiff, into believing that they are getting a discount—when in fact they are not. In addition to presenting a misleading strike-through price next to the actual price to deceive customers into believing they are receiving the items for a purported discount, Defendant also expressly warrants to customers they are saving $X. *See e.g.* Fig. 3




**Figure 3**

30. These representations fall squarely into the misleading pricing practice discussed in 16 C.F.R. § 233.1(a)—fictitious former pricing. For example, the Bodysuit that Plaintiff purchased was represented as marked down from an "original" price of "$65.00" to a "sale" price of "$45.00" ($20 in savings) at the time of Plaintiff's purchase. Similarly, the Dress Plaintiff purchased was represented as marked down from an "original" price of "$89.00" to a "sale" price of "$64.00" ($15 in savings). But as Plaintiff's counsel has confirmed through the use of available internet archives for Defendant's products, including but not limited to the Products purchased by Plaintiff, Defendant **never** sells its Products at the fictitious strike-through pricing.

31. In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

32. Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiff's purchases.

33. Plaintiff was harmed as a direct and proximate result of Defendant's acts and omissions.

34. Defendant commits the same unfair and deceptive sales practices for all of its Products.

35. Plaintiff and members of the Class are not receiving the bargain or value that Defendant has misled them to believe.

## CLASS ALLEGATIONS

36. Plaintiff brings this matter on behalf of herself and all those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive sales practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

37. **Class Definition:** Plaintiff seeks to represent a class of all individuals residing in California within the Class Period, who purchased any of Defendant's Products advertised at a discounted price.

38. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment.

39. Excluded from the proposed Class is Defendant; any affiliate, parent, or subsidiary of Defendant, any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant, any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

40. Plaintiff reserves the right to amend the definitions of the Class and/or add subclasses if further information and discovery indicate that the definitions should be narrowed, expanded, or otherwise modified.

41. **Numerosity:** Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

42. **Commonality:** The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

(a) Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

(b) Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

(c) Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public;

(d) Whether Plaintiff and the Class are entitled to injunctive relief; and

(e) Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

43. **Typicality:** Plaintiff is a member of the Class she seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

44. **Adequacy:** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to represent; her consumer fraud claims are common to all other members of the Class and she has a strong interest in vindicating her rights; she has retained counsel

competent and experienced in complex class action litigation and she intends to vigorously prosecute this action. Plaintiff has no interests which conflicts with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

45. **Superiority:** A class action is superior to any other available method for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable. Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained. Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments. By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

46. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I
## Violation of Consumers Legal Remedies Act ("CLRA") Civil Code §§ 1750, *et seq.*

47. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

48. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

49. This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

50. Plaintiff and members of the Class are consumers who purchased Defendant's Products for personal, family, or household purposes. Accordingly, Plaintiff and members of the Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

51. At all relevant times, Defendant's Products constituted "goods," as that term is defined in Cal. Civ. Code § 1761 (a).

52. At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(e).

53. At all relevant times, Plaintiff's purchases of Defendant's Products, and the purchases of other Class members, constituted "transactions," as that term is defined in Cal. Civ. Code § 1761 (e).

54. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

55. The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiff and the Class. Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

56. Defendant advertised goods or services with intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9).

57. Defendant made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of California Civil Code § 1770(a)(13).

58. Defendant violated California Civil Code §§ 1770(a)(9) and (a)(13) by representing that its Products were on sale or "% off," representing that consumers would "save $X," and displaying a strike-through reference price.

59. Plaintiff and members of the Class suffered injuries caused by Defendant's misrepresentations because (a) Plaintiff and members of the Class would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and members of the Class paid a price premium due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level of quality or value as promised.

60. Wherefore, Plaintiff seeks injunctive relief for this violation of the CLRA.

61. Plaintiff's CLRA venue declaration is attached.

**COUNT II**
**Violation of False Advertising Law**
**("FAL") Business & Professions Code §§ 17500, *et seq.***

62. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

64. California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

65. California's FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." *See* Cal. Bus. & Prof. Code § 17501.

66. Defendant violated California's FAL by representing that its Products were on sale or by representing that consumers would "save $X," and displaying a strike-through reference price. Defendant never offered the Products at the advertised strike-through price. Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

67. Defendant's actions in violation of § 17500 were false and misleading such that the general public was likely to be deceived.

68. As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality or value.

69. Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers. Plaintiff and members of the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

**COUNT III**
**Violation of Unfair Competition Law**
**Business & Professions Code §§ 17200, *et seq.***

70. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

72. Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides injunctive relief and restitution for violations.

73. "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

74. Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

75. Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, FAL, and federal regulations as described herein.

76. Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by representing that its Products were on sale or "% off," representing that consumers would "save $X," and displaying a strike-through reference price. Defendant never sold its Products at the advertised strike-through price. Such a deceptive marketing practice misled consumers by creating a

false impression that the Products were of a higher value and worth more than their actual worth.

77. As detailed above, the CLRA prohibits a business from "[a]dvertising goods or services with intent to not sell them as advertised." Cal. Civ. Code § 1770(a)(9).

78. Further, the CLRA prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(13).

79. California law also expressly prohibits false reference price schemes. Specifically, the FAL provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

80. Federal regulations also provide:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In**

> **such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

81. The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**." 16 C.F.R. § 233.1(b) (emphasis added).

82. The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.** Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

83. As described herein, the alleged acts and practices resulted in violations of federal and state law.

84. Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injuries to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiff and members of the

California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

85. Defendant's practices as described herein are of no benefit to consumers, who are tricked into believing that the Products are of a higher grade, quality, worth, and/or value than they actually are. Defendant's practice of injecting misinformation into the marketplace about the value of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about their Products. Taking advantage of that trust, Defendant misrepresents the value of its Products to increase its sales. Consumers reasonably believe that Defendant is an authority on the value of mattresses and therefore reasonably believe Defendant's representations that its Products are of a higher grade, quality, worth, and/or value than they actually are.

86. Defendant's conduct described herein violated the "fraudulent" prong of the UCL by representing that the Products were of a higher grade, quality, worth, and/or value, when in fact they were not.

87. Plaintiff and members of the Class are not sophisticated experts with independent knowledge of the value of mattresses, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

88. Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

89. As a direct and proximate result of these acts, consumers have been and are being harmed.

90. Defendant's violations of the UCL entitle Plaintiff and the class members to injunctive relief and full restitution.

91. Plaintiff and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

92. Absent injunctive relief, Defendant will continue to injure Plaintiff and class members. Defendant's conduct and omissions of material fact are ongoing. And, even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant yet evades review.

## COUNT IV
## Fraud

93. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

94. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

95. As discussed above, Defendant failed to disclose material facts about its sales practices, including that its sale prices were the normal prices at which the Products were typically sold, that its strike-through prices were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

96. These omissions made by Defendant, as described above, upon which Plaintiff and members of the Class reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class to purchase the Products.

97. The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## COUNT V
## Unjust Enrichment

98. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

99. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

100. Plaintiff and members of the Class conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

101. Defendant has knowledge of such benefits.

102. Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are on sale or representing that consumers would "save $X," and displaying a strike-through reference price. These misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

103. Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class Members;

(b) An order declaring Defendant's conduct violates the statutes referenced herein;

(c) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its sales practices and to comply with consumer protection statutes;

(d) Awarding monetary damages, including treble damages;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: November 26, 2025

**BURSOR & FISHER, P.A.**

By: /s/ *Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave, Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

## CLRA VENUE DECLARATION

I, Sarah N. Westcot, declare as follows:

1. I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2. Plaintiff Amanda Perkins alleges she is a citizen of California and a resident of Los Angeles, California.

3. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California, as Plaintiff alleges that she purchased the Product from her home while in this District. Additionally, Defendant allegedly advertised, marketed, manufactured, distributed, and/or sold the Product at issue to Class Members from this District.

4. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed on November 26, 2025, in Miami, Florida.

*/s/ Sarah N. Westcot*
Sarah N. Westcot